### J. T. BRACKENRIDGE ·ET AL. v. MARY A. HOWTH ET AL.

(Case No. 5266.)

1. PARTITION — ACQUIESCENCE — ESTOPPEL.— Two joint patentees executed and recorded a deed of partition between themselves; afterwards some question arising as to the validity of their patent, a new patent was obtained. Thirty-six years after the recording of the deed of partition, and twenty-five years after the issuance of the second patent, the heirs of one of the patentees brought suit for partition. *Held*, that the issuance of the second patent did not work a revocation of the partition, and so long a delay by the plaintiffs in asserting any right inconsistent with the deed of their ancestor raised the presumption that the deed was left in full force. The fact of plaintiffs having sold to defendants portion of the land claimed by plaintiffs under the deed of partition estopped them from asserting a right inconsistent with that deed.

APPEAL from Bexar. Tried below before the Hon. G. H. Noonan.

July 7, 1883, Mary A. Howth, as surviving wife, and the other appellees as children of W. E. Howth, deceased, brought this suit to recover of appellants an undivided half interest in the land described in the petition.

Their claim arose as follows: First. Patent issued to W. H. Dangerfield and W. E. Howth, assignees of F. Ortega, for about four hundred and fifty acres of land adjoining the city of San Antonio. Second. As surviving wife and heirship from W. E. Howth, deceased.

Appellants claimed one hundred and eight and one-half acres of land on the southern portion of the survey by deed from appellees, which is not controverted. They also claimed the northern portion of the survey by purchase from Mrs. Wilson, who by mesne conveyances, etc., derived title from Dangerfield; also deed of partition dated March 19, 1846, executed by Howth and Dangerfield, by which the former took the southern and the latter the northern portion of the survey. Other lands were also therein partitioned. This deed was recorded September 20, 1847.

Appellants relied upon the partition as declared in the deed, and also acquiescence and estoppel as against appellees. G. W. Brackenridge sought to make Mrs. Wilson a party defendant so as to recover over against her upon the warranty. She was then a resident of the state of Louisiana, and was served with a certified copy of the petition in accordance with the statute, but the court sustained a demurrer on the ground of jurisdiction of her person.

Appellees in reply claimed that a patent for eight and one-third labors of land, including that in controversy, was patented to Howth and Dangerfield February 14, 1842, and after the partition was had they ascertained that the survey conflicted with the city grant, and that they caused the patent to be canceled and a resurvey made and another patent issued. This they claim abrogated and nullified the partition.

Trial was had without a jury, and a judgment was rendered for appellees, from which this appeal was taken.

The material questions are indicated in the opinion.

*Shook & Dittmar*, for appellants, cited: Parker v. Spencer, 61 Tex., 165; Portis v. Hill, 30 Tex., 529, quoted in Hobby's Land Law, § 376; Hines v. Thorn, 57 Tex., 104; Carlisle v. Hart, 27 Tex., 353; Connolly v. Hammond, 51 Tex., 647; chs. 2 and 3, R. S., particularly art. 3207; Kimbro v. Hamilton, 28 Tex., 567, 568; Williams v. Chandler, 25 Tex., 11; Timon v. Whitehead, 58 Tex., 295; Bigelow on Estoppel, p. 431; p. 435, doctrine of Pickard v. Sears; Floyd v. Rice, 28 Tex., 343, 344; Davis v. Smith, 61 Tex., 23; 7 Am. Dec., 87; Jackson v. Hardee, 4 Am. Dec., 262; 5 Am. Dec., 548, case of Haughabaugh v. Honald; Freeman on Co-tenancy and Partition, §§ 188, 397, 402, 407; Bigelow on Estoppel, 513, 514, and § 408; Story on Agency, § 250.

*Clifford & Aycock*, for appellees, cited: Martin v. Brown, 5 Law Rev., p. 29; Miller v. Brownson, 50 Tex., 591; Holmes v. Johns, 56 Tex., 53; Dikes v. Miller, 25 Tex. Supp., 291; Murphy v. Welder, 58 Tex., 241; Mast v. Tibbles, 60 Tex., 307; Grigsby v. Caruth, 57 Tex., 271.

WATTS, J. COM. APP.— Where the first patent was canceled and a resurvey made and another patent issued, the parties might possibly have been entitled to another partition of the land. But this change did not necessarily work a rescission or revocation of the partition which Howth and Dangerfield had previously voluntarily

made by their joint deed, then of record. Even though one may have lost more of the land allotted to him than did the other, still that deficit might have been made good by a voluntary or forced contribution without in any manner interfering with the division line established by the parties in their deed.

At the time this suit was brought that deed had been on record for about thirty-six years, and more than twenty-five years had elapsed after the issuance of the second patent before appellees are shown to have asserted any right inconsistent with the deed of partition. Both Dangerfield and Howth were dead when the suit was brought, and there is not a single circumstance shown which in the slightest degree indicates, at any time, a disposition upon the part of either to repudiate the partition which they had mutually agreed upon and evidenced by their deed.

But, to the contrary, some three years subsequent to the issuance of the last patent, it appears that Howth, while upon the land in company with the surveyor, told him about the partition that had been made, and explained the matter by stating that Dangerfield got the north and he the south end of the survey. In that conversation it seems that he expressed no dissatisfaction with the partition, or any determination on his part to repudiate it on account of the correction of the survey.

After so long delay by appellees in asserting any right inconsistent with the deed of their ancestor, certainly it will not be presumed that the original parties did not enter into some arrangement about the deficit entirely satisfactory to themselves, and by which their partition deed was left in full force. By the deed they had fixed the division line and declared to the world that it was the common boundary which marked the limit of their respective individual estates. And it is a reasonable supposition that, if they had not intended it to so remain, the contrary would have been declared by them in some certain and definite manner.

According to the case as presented by the record, it seems to admit of no doubt but that the partition line as agreed upon and fixed in the deed must be considered and held the common boundary between the parties.

But in addition to that view, it appears that the parties have acted upon and acquiesced in that partition. Appellants, it seems, purchased one hundred and eight and one-half acres of land from the appellees, which was situated on the south end of the survey, and that this purchase was made upon the faith of the partition, as shown by the joint deed of Howth and Dangerfield. It also appears

that appellant G. W. Brackenridge made the several purchases from Mrs. Wilson of the land on the north end of the survey, relying upon the partition deed.

Evidently the appellees are estopped from asserting any right inconsistent with the deed of their ancestor. Kimbro v. Hamilton, 28 Tex., 560; Parker v. Campbell, 21 Tex., 763.

In our opinion the finding of the court is against the evidence, and that the judgment ought to be reversed; but as the evidence does not disclose with certainty whether there is any land upon the survey south of the partition line, and not embraced in the conveyance from appellees to the appellants, the cause ought to be remanded with directions to the court below that this fact be ascertained, and if there is any such land, then to render judgment therefor in favor of the appellees, unless a distinct and unequivocal disclaimer is filed by appellants.

Owing to the conclusions reached, it becomes unnecessary to consider the assignments of error with respect to the ruling of the court on the demurrer presented by Mrs. Wilson. For it is not claimed that she conveyed to G. W. Brackenridge any land lying south of the established partition line.

REVERSED AND REMANDED.

[Opinion approved May 22, 1885.]